UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MATTHEW HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:05-CV-081 PPS PRC |
| ) | |
| JUPITER ALUMINUM CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Not often does the Court preside over a case that generates more activity *after* dismissal than it did beforehand. But the Court does so here. What triggered all of the post-dismissal activity are two motions for sanctions filed by Defendant Jupiter Aluminum Corporation against Attorney Larry J. Coven, counsel for Plaintiff. [DE 18, 19] Coven voluntarily dismissed this lawsuit less than three months after filing it. Nevertheless, Jupiter seeks sanctions against him because, according to Jupiter, the lawsuit was frivolous from the outset and was potentially filed for an improper purpose, namely to influence a union election at Jupiter. Though Coven's conduct may not have been exemplary, it was not sanctionable. As explained below, Jupiter's motions are denied.

**BACKGROUND**

On March 3, 2005, Coven filed a one-count complaint against Jupiter Aluminum Corporation on behalf of Plaintiff Matthew Henderson. [DE 1] The complaint alleged that Jupiter had violated the Fair Labor Standards Act, 29 U.S.C. § 201, by willfully refusing to pay overtime wages to Henderson and other similarly-situated employees for overtime hours they

had worked at Jupiter. *Id*. Although the complaint alleged injury by more than one employee, Henderson was the only named plaintiff. *Id*.

Before filing the complaint, Coven spoke to Henderson and other Jupiter employees who told Coven that they had not received overtime wages from Jupiter for overtime hours they had worked. [DE 25, Ex. B] Coven asked Henderson and the other employees (again before filing suit) for pay stubs and other documentation to support their claims, but Henderson and the other employees told Coven that they did not maintain any corroborating materials. *Id*. Coven did obtain eighty "Notice of Consent Forms to Become a Party Plaintiff in a Collective Action under the Fair Labor Standards Act." *Id*. Based on these forms, Coven anticipated adding plaintiffs to the lawsuit but never filed any of the consent forms with the Court.[1]

Coven filed the complaint a few days before a union election at Jupiter to determine whether its employees would join a union. [DE 20 at 2] When Coven filed the complaint on March 3, 2005, the union vote was scheduled to occur on March 8 and 9. *Id*. The employees voted on March 8 and 9, but the results were nullified and a "rerun" election was scheduled for April 26 and 27, 2005. *Id*. at 3.

Leading up to the votes, the union attempting to organize Jupiter's employees met with the employees several times. [DE 20, Ex. 2] The union discussed Coven's lawsuit at some of

---

[1] Under the Fair Labor Standards Act, a plaintiff may sue on behalf of himself and other employees similarly situated. *See* 29 U.S.C. § 216(b). This is known as a "collective action." However, no similarly-situated employee becomes a party to the collective action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* (emphasis added). The Seventh Circuit interprets the filing requirement strictly: "if you haven't given your written consent to join the suit, or if you have but it hasn't been filed with the court, you're not a party." *Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004).

these meetings and, on one occasion, brought a lawyer (other than Coven) to talk about the case. [DE 20, Exs. 2, 3] Sometime before the March 8 and 9 vote, the union created a flier encouraging Jupiter employees to ask management whether it would help the employees recover overtime pay for the last three years. [DE 20, Ex. 1] The union never distributed the flier to employees but used the information in the flier as talking points at an employee meeting. [DE 20, Ex. 6, ¶ 11.] Though it discussed the suit at campaign meetings, the union had no involvement in Coven's suit against Jupiter. *Id*. The union did not retain Coven to file the lawsuit and it did not contribute any money toward the lawsuit. *Id*. In its meetings with the employees, the union stressed that the lawsuit was not contingent in any way on the outcome of the union vote. *Id*. Coven never spoke at any union campaign meetings and never had an interest in the outcome of the election. [DE 25, Ex. B., ¶¶ 4-5]

The union, however, was not entirely divorced from the genesis of the suit. During the initial organizing meetings, the union identified possible FLSA violations based on statements made by Jupiter employees. [DE 20, Ex. 6, ¶ 12.] A union officer has sworn that she "discussed the situation with two different law firms" and that Coven's firm "proceeded to research the possible violations and determined that this was something they would pursue." *Id*. Thereafter, the union had no further involvement in the litigation, did not fund the litigation and stressed to the employees that the litigation and union election were separate from one another. *Id*.

On March 16, 2005, counsel for Jupiter, Steven Crist, wrote a letter to Coven, asserting that the lawsuit was "frivolous and completely without merit." [DE 20, Ex. 7] Crist demanded proof that Henderson or any other Jupiter employee had not received overtime pay as required

3

by the FLSA. *Id*. Also, Crist warned Coven that if he did not provide the requested information within twenty-one days, Jupiter would seek Rule 11 sanctions against Coven. *Id*.

Coven received Crist's letter on March 18, 2005. [DE 25, Ex. C.] Coven then contacted Henderson and at least three other Jupiter employees including Hector Tiscareno. Coven confirmed with these individuals that Jupiter had not payed them overtime. [DE 25, Ex. B., ¶ 10.] Coven again asked the employees for pay stubs and other corroborating documents, but they again told Coven that they did not have any. *Id*.

Coven responded to Crist on April 4, 2005. [DE 20, Ex. 8] Coven explained that he filed the lawsuit based on information he collected from over one hundred Jupiter employees regarding Jupiter's method of paying overtime to employees who did not work a traditional, Monday-to-Friday work week. *Id*. In addition, Coven asked Jupiter to produce the time cards of all Jupiter employees who did not work a traditional work week. *Id*. Coven agreed to dismiss the lawsuit promptly if his examination of the time cards did not reveal an FLSA violation. *Id*.

On April 5, 2005, Jupiter produced to Coven over 500 pages of documents, including Henderson's payroll records for the time period alleged in his complaint. [DE 20, Ex. 9]

Coven received Henderson's payroll records on or about April 9, 2005. [DE 25, Ex. B.] Coven believed, for at least some period of time, that the payroll records supported the allegations in the complaint but he does not explain the basis for this belief. *Id.*

On April 8, 2005, another lawyer for Jupiter, Joshua Rabinovitz, wrote to Coven and memorialized a telephone conversation that he and Coven had had earlier in the week. [DE 20, Ex. 10] Rabinovitz explained that Coven's purported theory of the case – *i.e.*, that Henderson wrongly had been denied overtime because his weekly shift runs from Wednesday to Sunday

4

while Jupiter's workweek is from Monday to Friday – is squarely negated by a Department of Labor regulation. *Id*. Rabinovitz quoted the regulation, which provides that a workweek "need not coincide with the calendar week but may begin on any day and at any hour of the day." *Id*. Rabinovitz asked Coven to review the payroll records that Jupiter had produced and to dismiss the lawsuit (with prejudice) on or before April 15, 2005. *Id*.

Jupiter's next move was an odd one. Despite giving a "deadline" of April 15, 2005 for Coven to dismiss the lawsuit, beginning on April 10, 2005 Jupiter began expending time and money preparing a summary judgment motion. (*See* Def't Mem. at 9-10). Then, on April 13, 2005 – two days before the self-imposed deadline by which defense counsel wanted to hear from Coven about voluntarily dismissing the case – Jupiter moved for summary judgment. [DE 9] Jupiter's stated goal was to hold down costs on a case they believed to be without merit. Yet the record is not clear why Jupiter would expend time and money to file a summary judgment motion before April 15th, when that was the date they gave Coven to dismiss the case on his own.

On April 22, 2005, Coven responded to Rabinovitz' April 8 letter. [DE 20, Ex. 11] Coven indicated that he had finished his review of Henderson's payroll records but he could not determine the validity of Jupiter's position based on Henderson's time cards alone. *Id*. Coven asked Jupiter for a three-month sample of time cards of all Jupiter employees who worked in the hotmill department (presumably the same department where Henderson worked) at Jupiter. *Id*. Coven reiterated that he would promptly dismiss the lawsuit if the requested time cards did not demonstrate an FLSA violation. *Id*.

On April 26, 2005, Jupiter rejected Coven's request for additional time cards. [DE 20, Ex. 12] Jupiter saw "no basis" for Coven's request for additional material "regarding employees

5

[Coven] did not represent." *Id*. Jupiter labeled Coven's request a "delay tactic" designed to maintain the case through the union election. *Id*. Jupiter again encouraged Coven to dismiss the lawsuit with prejudice. *Id*. On April 26 and 27, the second union vote occurred while the suit was still pending.

After receiving Jupiter's April 26 letter, Coven sought the advice of Doug Werman and Jamie Sypulski, two lawyers who handle FLSA cases on a regular basis. [DE 20, Ex. 13] After consulting with Werman and Sypulski, Coven asked Jupiter for additional time to respond to Jupiter's summary judgment motion (his response was due May 14). *Id*. Jupiter refused. *Id*.

On May 12, 2005, two days before his response to Jupiter's summary judgment motion was due, Coven informed Jupiter that he would dismiss the lawsuit voluntarily. [DE 20, Ex. 13] Coven voluntarily dismissed the case with prejudice on May 16, 2005, seventy-six days after he filed suit. [DE 16]

On May 19, 2005, Jupiter filed two motions for sanctions against Coven: one pursuant to Rule 11 of the Federal Rules of Civil Procedure; and the other pursuant to 28 U.S.C. § 1927 and the Court's inherent authority. [DE 18, 19] Jupiter served Coven with the Rule 11 motion the same day Jupiter filed it. *Id*.

On June 3, 2005, Attorney Sypulski filed an overtime action in this Court against Jupiter on behalf of James Boyd, Hector Tiscareno, Joshua Turner, and other similarly situated Jupiter employees. [DE 25, Ex. L; *Boyd et al. v. Jupiter Aluminum*, Case No. 05-CV-227] Tiscareno was among the employees with whom Coven consulted to verify the allegations in the case. *Boyd* remains pending before the Court and there appears to be some overlap between that case and the present one. To date, Jupiter has not moved for sanctions or summary judgment in *Boyd*.

**DISCUSSION**

"A serious request for sanctions in entitled to more than a brushoff." *Nisenbaum v. Milwaukee Co.*, 333 F.3d 804, 811 (7th Cir. 2003). Accordingly, we analyze below Jupiter's request for sanctions under § 1927, Rule 11, and this Court's inherent authority, respectively.

A.  **Sanctions under 28 U.S.C. § 1927**

Jupiter argues that Coven should be sanctioned under § 1927 because he knew or should have known from the outset that the complaint was frivolous. [DE 20 at 6.] An attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The statute "does not distinguish between winners and losers" and "is indifferent to the equities of a dispute." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980). It "is concerned only with limiting the abuse of court processes." *Id*. A court is not obliged to grant sanctions under § 1927 if it finds unreasonable and vexatious conduct, but may do so in its discretion. *Corley v. Rosewood Care Center Inc. of Peoria*, 388 F.3d 990, 1014 (7th Cir. 2004).

The "key point" in a § 1927 inquiry is the "objective unreasonableness of the attorney's actions, not the absence of bad faith or evil intent." *Claiborne v. Wisdom*, 414 F.3d 715, 721 (7th Cir. 2005). "In assessing whether an attorney's actions were objectively unreasonable, a court may infer intent from a total lack of factual or legal basis for a suit." *Burda v. M. Ecker Co.*, 2 F.3d 769, 777 (7th Cir. 1993) (internal quotation omitted). Pressing a claim after its "emptiness becomes pellucid must be described as vexatious." *Nisenbaum*, 333 F.3d. at 809. The Seventh Circuit has upheld sanctions under § 1927 where counsel acted recklessly, raised

baseless claims despite notice of their frivolous nature, or otherwise showed indifference to statutes, rules or court orders. *Claiborne*, 414 F.3d at 721. The Court has also interpreted § 1927 "to impose a continuing duty upon attorneys to dismiss claims that are no longer viable." *The Jolly Group LTD v. Medline Industries, Inc.*, --- F.3d ----, 2006 WL 162995, *2 (7th Cir. Jan. 24, 2006) (citation omitted).

*Medline* is illustrative and, in this Court's view, the paradigm for sanctions under § 1927. In *Medline*, the plaintiff sued Medline for breach of contract. Medline moved to dismiss. Instead of responding to the motion to dismiss, the plaintiff filed an amended complaint. Medline noted critical inconsistencies between the plaintiff's two complaints and threatened to seek sanctions under Rule 11. Medline then filed a motion to dismiss the amended complaint, which the district court granted with prejudice. Two weeks later, Medline moved for sanctions under Rule 11 and § 1927. Instead of responding to the sanctions motion, the plaintiff filed a motion to reconsider the dismissal order and for leave to file a second amended complaint. *Id*. at 2. Ultimately, the district court denied sanctions under Rule 11 but awarded sanctions under § 1927. *Id*. at 3. The court separated the conduct of plaintiff's counsel into two time periods – before and after the dismissal with prejudice. *Id*. The district court found that counsel's conduct after dismissal (his motion for reconsideration and for leave to file a second amended complaint) was clearly vexatious and unreasonable, and imposed sanctions under § 1927. *Id*. The Seventh Circuit affirmed. Judge Evans noted: "After his case was dismissed with prejudice, prudence should have counseled that by filing additional motions aimed at changing facts and responding to the court's conclusions, he was pursuing a path that was unsound." *Id*. at 5.

8

Coven's conduct here was not objectively unreasonable and vexatious under § 1927. Coven filed a complaint based on his client's word, which was echoed by dozens of other Jupiter employees. Coven tried (unsuccessfully) to obtain corroborating information before filing suit. Based on the record before the court, Coven did not have any information that contradicted his client's representations at the time he filed the complaint. Coven did not receive evidence negating Henderson's claim until April 9, 2005, when Coven received Henderson's payroll records from Jupiter. Five weeks later, Coven dismissed the lawsuit voluntarily.

Coven may not have acted in the most diligent manner, and his decision to file suit shortly before the union vote (and to dismiss the case shortly after the union vote) is suspicious. However, his actions were not objectively unreasonable. The Court declines to sanction an attorney whose client provided facts that constituted a violation of federal law, who then attempted (yet failed) to gather corroborating materials from his client before filing suit, who dismissed the suit approximately a month after receiving evidence that negated his client's claims, and who did nothing in the interim to expand or multiply the litigation. Though Coven could have acted more swiftly than he did in dismissing the lawsuit, his conduct does not constitute "pressing a claim after its emptiness became pellucid." *Nisenbaum*, 333 F.3d. at 809.

In addition, Jupiter chides Coven for not dismissing the lawsuit promptly upon receipt of Henderson's records and instead seeking the payroll records of employees other than Henderson. According to Jupiter, Coven's request was improper because, at the time, Henderson was the only named plaintiff and Coven had not filed any consent notices to add other plaintiffs to the suit.

9

Given the sequence of events, Coven's request for other employees' records was neither unreasonable nor vexatious. Coven's complaint purported to be a "collective action" under the FLSA. *See* 29 U.S.C. § 216(b) (an action for unpaid overtime may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). Coven had obtained eighty consent notices from Jupiter employees with the hopes of adding plaintiffs to the lawsuit. Jupiter correctly notes that Coven never filed any of the consent notices and, consequently, none of the individuals ever became a plaintiff in this case. *Id*. However, Jupiter responded immediately to Coven's complaint with guns blaring and threatened to seek sanctions against Coven if he did not dismiss the case voluntarily. Coven, quite reasonably, asked Jupiter to produce records in its possession so that he could assess whether the claims had merit. Although Jupiter had a basis to resist discovery of other employees, Coven did not act unreasonably or vexatiously by seeking it. After all, his complaint was framed as a collective action, the litigation was in an infant stage, and Coven, according to his affidavit, had eighty consent notices in his back pocket.

For these reasons, Jupiter's request for sanctions under § 1927 is denied.[2]

---

[2] Though not central to its ruling, the Court acknowledges that a second overtime action was filed against Jupiter on June 3, 2005 in the wake of Coven's voluntary dismissal. *Boyd et al. v. Jupiter Alum. Corp.*, No. 2:05cv227 (N.D. Ind. 2005). Like Coven's action, the second action purports to be a collective action under the FLSA. Plaintiffs' counsel in the second action are the two FLSA lawyers that Coven consulted regarding this case. [DE 25, Ex. 2] Furthermore, one of the named plaintiffs in the second action – Hector Tiscareno – is among the Jupiter employees that Coven had consulted to verify the allegations in his (Coven's) complaint. *Id*. To date Jupiter has not filed any motions for sanctions, dismissal, or summary judgment in the second action. While the second action does not excuse Coven from his professional obligations, its existence suggests that Coven did not manufacture his claims from whole cloth.

10

B.     **Sanctions under Rule 11**

As a threshold matter, the Court addresses whether Jupiter satisfied the unique service requirement for Rule 11 motions.  A motion for sanctions under Rule 11 "shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."  Fed. R. Civ. P. 11(c)(1)(A).  This provision, known as the "safe harbor provision," provides a twenty-one day "safe harbor" during which a party may withdraw or correct the supposedly offensive pleading and avoid the imposition of sanctions.  *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025-26 (7th Cir. 1999).  Only if the adverse party maintains its position may the movant inform the court and request sanctions.  *Nisenbaum*, 333 F.3d. at 808.

The parties agree that Jupiter served and filed its Rule 11 motion on the same day.  Thus, Coven contends, the motion should be denied out of hand.  Jupiter, on the other hand, submits that it fulfilled the notice requirement by warning Coven of possible Rule 11 sanctions in a letter dated March 16, 2005, more than twenty-one days before Jupiter filed its Rule 11 motion.

Jupiter relies on *Nisenbaum*, which held that a defendant who sent a "letter" or "demand" to the plaintiff at least twenty-one days before filing its Rule 11 motion had "complied substantially" with the Rule 11(c)(1)(A) service requirement and thus was entitled to a decision on the merits.  *Id*. at 808.  Although the plain language of Rule 11(c)(1)(A) appears to require the moving party to serve the motion itself at least twenty-one days before filing it, the Court is bound by *Nisenbaum*.  No meaningful distinction can be drawn between the notice given in *Nisenbaum* and Jupiter's March 16, 2005 letter here.  Thus, Jupiter's March 16, 2005 letter to

11

Coven complied substantially with the service requirement of Rule 11(c)(1)(A). The Court proceeds to the merits of Jupiter's Rule 11 motion.

The central goal of Rule 11 is to deter abusive litigation practices. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). Under Rule 11, when an attorney presents documents to the court, he certifies to the best of his knowledge that (1) the documents are not being presented for an improper purpose; (2) the claims and contentions are warranted by existing law; and (3) the allegations and factual contentions have evidentiary support. *Sullivan-Moore*, 406 F.3d at 469; Fed. R. Civ. P. 11(b). Rule 11 establishes an objective test. "An empty head but a pure heart is no defense." *Id*. at 470 (citation omitted). In assessing whether a complaint is frivolous, the focus must be "on what counsel knew at the time the complaint was filed, not what subsequently was revealed in discovery." *Corley*, 388 F.3d at 1014 (declining to judge attorney's actions in filing the lawsuit with the "20/20 vision of hindsight"). The fact that a claim turns out to be groundless "does not necessarily mean that Rule 11 sanctions are appropriate (much less required)." *Id*.

Jupiter contends that Coven violated Rule 11 by: 1) filing a frivolous complaint; and 2) filing a complaint with a seemingly improper purpose, namely, to influence the union election. [DE 20 at 11-12] The Court disagrees on both fronts.

    1.    "Frivolous Complaint"

Jupiter argues that the complaint was frivolous because it lacked evidentiary support and was not warranted by existing law. Coven had at least some evidentiary support for filing suit against Jupiter. Before Coven filed the complaint, Henderson told him that he had not received overtime pay for overtime hours he worked at Jupiter. Coven received the same information

from dozens of other Jupiter employees. Coven asked Henderson and the other employees for back-up documentation, but they told him they did not have any. In these circumstances, it was not unreasonable for Coven to rely on Henderson's representations to support the allegations in a complaint. *See Albrecht v. Stranczek*, 136 F.R.D. 155, (N.D. Ill. 1991) (J. Lefkow) (refusing to impose Rule 11 sanctions against plaintiff's counsel for filing frivolous count with respect to particular parcel of property where plaintiff affirmatively represented to his counsel that he owned parcel, never indicated that property had been foreclosed upon, and counsel had no reason to question client's representation and did not act unreasonably in relying upon it); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329-30 (2d Cir. 1995) ("The new version of Rule 11 makes it even clearer that an attorney is entitled to rely on the objectively reasonable representations of the client [because] . . . [n]o longer are attorneys required to certify that their representations are 'well grounded in fact.'").

According to Jupiter, Coven should not avoid sanctions by relying on Henderson's word because any reasonable inquiry would have demonstrated that the suit was frivolous and Henderson's assertions were false. In deciding whether an attorney conducted a reasonable pre-filing inquiry, several factors should be examined, including whether the signer of the documents has sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the complaint; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts. *Divane*, 200 F.3d at 1028.

Based on the record before us, we cannot find that Coven's pre-filing inquiry was objectively unreasonable. Before he filed the complaint, Coven asked Henderson for documents to corroborate his claim but Henderson did not have any. This shows at least some degree of diligence on Coven's part. Henderson's failure to maintain corroborating documents does not necessarily render his statements to Coven unreliable, especially in light of the dozens of other employees who echoed Henderson's statements. Furthermore, this is not a situation in which Coven had access to documents that contradicted Henderson's statements before Coven filed suit. *Compare Insurance Ben. Administrators, Inc. v. Martin*, 871 F.2d 1354, 1357-58 (7th Cir. 1989) (upholding Rule 11 sanctions where attorney, before filing suit, had access to documents that belied his claim). Moreover, when Jupiter told Coven that the suit was meritless, Coven went back to Henderson and other employees, confirmed their previous statements about not receiving overtime pay, and asked them again for supporting documents. Coven also asked Jupiter to produce certain payroll records and he agreed to dismiss the case if the records negated the allegations in the complaint.

While Coven perhaps could have done more to test the validity of Henderson's claim before filing suit (*e.g.* as Jupiter points out, he could have asked Henderson to hold onto his next pay stub and forward it to Coven), Coven's conduct was not objectively unreasonable under the circumstances. *See Kraemer v. Grant County*, 892 F.2d 686, 689 (7th Cir. 1990) (in Rule 11 context, "it is not necessary that an investigation into the facts be carried to the point of absolute certainty."); *Bilharz v. First Interstate Bank of Wis.*, 98 F.3d 985, 989 (7th Cir. 1996) (reversing award of sanctions where plaintiff's claims were "undoubtedly weak" but not "so devoid of factual support" to warrant sanctions).

14

Jupiter also urges that Coven had no legal basis for the suit.  As support, Jupiter relies on a conversation between its counsel and Coven in which Coven apparently advanced a legally flawed theory of the case, *i.e.* that Jupiter sidestepped its overtime obligations by defining its workweek in such a manner that penalized workers like Henderson who worked a non-traditional workweek.  This theory, according to Jupiter, is flat out wrong because the Department of Labor has made clear in its regulations that an employer can define its workweek any way it wants.  *See* 29 C.F.R. § 778.105.

Jupiter reads Rule 11 too broadly.  The rule governs "pleading[s], written motion[s], or other paper[s]" presented to the Court.  Fed. R. Civ. P. 11(b).  Nothing in the complaint signed and filed by Coven alleges the misguided legal theory that he apparently advanced in telephone conversations with Jupiter's counsel.  Rather, the complaint alleges merely that Henderson and similarly-situated employees worked "in excess of 40 hours per week" and that Jupiter paid them "regular hourly wages" for those excess hours.  [DE 1 at ¶¶ 11-12]  Notwithstanding what Coven may have said in discussions with opposing counsel, the allegations in the complaint, if true, would violate the FLSA.  The Court declines to sanction Coven under Rule 11 for misstating the law in conversations with opposing counsel.

        2.    "Improper Purpose"

Jupiter also seeks sanctions under Rule 11 because Coven "seems" to have filed the complaint with an improper purpose – to influence the union elections in March and April of 2005.  In this circuit, an attorney can violate Rule 11 if he brings an action for an improper purpose even though the claims are well-based in fact and law.  *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 826 (7th Cir. 2001) (affirming district court's denial of Rule 11

sanctions on improper purpose grounds where defendant alleged that plaintiff filed suit to gain a political advantage in union elections).

Jupiter argues that "if Coven signed the complaint with the intention of assisting the [union] knowing full well that it was frivolous, that would constitute an improper motive under [Rule] 11(b)(1)."  [DE 20 at 12]  The Court does not quarrel with that statement.  However, the evidence before the Court does not support a finding that Coven filed the lawsuit "with the intention of assisting the union" or that he knew the case was frivolous at the time he filed it.

While the union appears to have alerted Coven to a possible overtime suit against Jupiter, that act is not improper.  The union did not retain Coven to file suit against Jupiter nor did it contribute money to the cause.  In addition, Coven never attended a union campaign meeting and had no interest in the outcome of the election.  The fact that the union discussed the suit at campaign meetings (or derived some benefit from the existence of the suit) does not necessarily mean that the suit had an improper purpose.

The Court acknowledges the suspicious timing of the complaint and its dismissal in relation to the union elections at Jupiter.  Coven filed suit five days before the March election and waited to dismiss the case until the April "rerun" election had taken place.  But this is not enough for this Court to find that Coven filed the complaint for an improper purpose.  Thus, Jupiter's request for Rule 11 sanctions is denied.

**C.     Sanctions Based on the Court's Inherent Authority**

A court has the inherent authority to impose sanctions for actions taken in bad faith, vexatiously, wantonly, or for oppressive reasons.  *Johnson v. Cherry*, 422 F.3d 540, 548-49 (7th

Cir. 2005). Based on its previous findings, the Court declines to exercise this authority to sanction Coven for his conduct in this matter.

## CONCLUSION

For the foregoing reasons, Jupiter's Motions for Sanctions [DE 18 & 19] are **DENIED**. Larry J. Coven's Motion To Strike Jupiter's Reply Brief [DE 28], his Request for a Hearing [DE 30], and Jupiter's Cross-Request for an Evidentiary Hearing [DE 33] are **DENIED AS MOOT**.

**SO ORDERED**.

ENTERED:  February 15, 2006

             s/ Philip P. Simon
             PHILIP P. SIMON, JUDGE
             UNITED STATES DISTRICT COURT